IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARCON INC., et al, ) | |
| ) | |
| Plaintiff, ) | Case No. MC08-6562-S-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Petitioners', MarCon, Inc. and Elaine J. Martin, Motion for Stay of Enforcement of IRS Summons Pending Appeals. (Dkt. No. 25.) The motion is made pursuant to Federal Rule of Civil Procedure 62(a). The matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately represented in the briefs and record. Accordingly, and in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Respondent, the United States of America, through the Internal Revenue Service ("IRS"), is examining the income tax liabilities of Petitioner MarCon, Inc. ("MarCon") for the tax years 2005 and 2006. Petitioner Elaine J. Martin ("Martin") is the president and majority shareholder of MarCon. (Report and Recommendation at 2, Dkt. 18) On July 9, 2008, the IRS issued an administrative summons ("July Summons") to a third party, Bank of the Cascades ("Cascades"), seeking "a listing of all accounts held in the name of and/or for the benefit of" MarCon in 2005. *Id.* No notice was given to either MarCon or Martin. *Id.*

On December 2, 2008, the IRS issued a second summons ("December Summons") to Cascades seeking "all records of all accounts, all loans made and applied for, all credit or debit cards issued, and all "Private Banking" agreements between Cascades and MarCon or Ms. Martin, from December 1, 2003 through January 31, 2007." *Id.* Notice was given to the Petitioners.

On December 19, 2008, the Petitioners filed a Petition to Quash IRS Summons. (Dkt. 1.) The Petitioners allege that the July Summons was illegal for lack of notice, and that the December Summons, as a product of the July Summons, was illegal as well. *Id.* at 3-4. On April 27, 2010, the Court adopted the Report and Recommendation issued on November 19, 2009 (Report and Recommendation), and found that the July Summons was legal and as a result the December Summons at issue was legal as well. (Order Adopting Report and Recommendation at 6, Dkt. 22.)

On May 3, 2010, as a result of that order, the IRS issued a letter to Cascades seeking the documents at issue in the December Summons. On May 17, 2010, the Petitioners filed their notice of appeal. (Dkt. 27.) As a result of that appeal the Petitioners now move the Court for Stay of Enforcement of IRS Summons Pending Appeals. (Dkt. 25.)

## STANDARD OF REVIEW

The Ninth Circuit has treated the standard for determining whether a stay pending appeal should be granted as the same as a preliminary injunction. *Golden Gate Restaurant Ass'n v. City and County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008). The Supreme Court recently clarified the standard for a preliminary injunction to require a plaintiff to show "[1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008) (citations omitted). *Winter* overturned a Ninth Circuit case where the injunction had been issued based solely on "a "possibility" of irreparable harm." *Id.* Prior to *Winter,* the Ninth Circuit had used a

standard that considered the same elements listed in *Winter* on a continuum, such that a strong showing of likelihood to succeed on the merits could make up for a deficiency in showing the probability of irreparable harm. *Golden Gate Restaurant Ass'n* 512 F.3d 1115-1116 (citing *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983).). It is not clear that this continuum is still viable in the wake of *Winter*. The IRS contends that the continuum has been overturned entirely while the Petitioners contend that the Supreme Court merely created a higher standard for showing irreparable harm.

The IRS cites *Dudum v. City and County of San Francisco*, 2010 WL 1532365 *11 FN 5 (N.D. Cal. April 16, 2010) and *Gonzalez v. Alliance Bancorp*, 2010 WL 1575963 *2 (N.D. Cal. April 19, 2010) for the proposition that "[t]he Supreme Court in *Winter* rejected the Ninth Circuit's "sliding scale" approach." The IRS also points to a Ninth Circuit decision which held "an injunction cannot issue merely because it is possible that there will be an irreparable injury to the plaintiff; it must be likely that there will be […] to the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). It is not clear, however, that *Am. Trucking* lends support to the proposition in *Dudum*. The Ninth Circuit in that case did not discuss the balancing test, it only reiterated the holding of *Winter* that "possibility" is no longer a viable standard for evaluating the sufficiency of irreparable harm for the purposes of a preliminary injunction.

Recent cases have not been as strident as *Dudum* or *Gonzalez*. In *Jacobzen v. Katzer*, 609 F.Supp.2d 925 (N.D. Cal. 2009) the court considered a copyright case and stated the standard for a preliminary injunction as including "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits, where the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 935 (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000). The court recognized that the "possibility" element was no longer viable after *Winter*, and that the special provisions in federal copyright law

which automatically conferred a presumption of irreparable harm on a plaintiff that could show a likelihood of success on the merits had likewise been overturned. *Id.* at 936. The court did not comment on whether the overall "sliding scale" scheme had been overturned. The most recent case from the Ninth Circuit to discuss a preliminary injunction, *Toyo Tire v. Cont. Tire* No. 10-55145 (9th Cir. June 17, 2010 from N.D. Cal.), listed the *Winter* factors but did not comment on the "sliding scale" test as the district court had failed to address the factors. (14-15).

It does appear that the *Dudum* court and the IRS overstate the reach of the *Winter* holding. As Petitioners indicate there is nothing in the *Winter* holding that addresses the continuum nature of the Ninth Circuit's test. The Court's reading of *Winter* is that it requires a heightened standard for a preliminary injunction such that there must be a minimum, likely finding of irreparable harm which a plaintiff must show; but a court could still consider the likelihood of success on the merits if, after showing likely irreparable harm, the plaintiff had still not met the burden for a preliminary injunction. Indeed, the main thrust of the *Winter* holding is an admonition to the lower courts to properly weigh the competing interests when considering a preliminary injunction. *Winter v. Natural Resource Defense Council, Inc.*, 129 S.Ct. 365, 376 (2008). Viewed in this light, the Supreme Court's rejection of the "possibility" standard for irreparable harm is an instruction to the lower courts to make sure that the harms represented by a plaintiff are concrete enough to properly weigh against other interests. As such, the Court declines to adopt the expansive reading of *Winter* in *Dudum,* but acknowledges that post-*Winter* plaintiffs have a heightened burden of showing irreparable harm.

## DISCUSSION

### 1. Likelihood of Success

In order to prevail on a motion for stay granting appeal the Petitioners must show that they have a likelihood of success on the merits. The IRS' July Summons was carried out pursuant to 26 U.S.C. § 7609(c)(2)(B) which provides an exception to the general requirement that the IRS give notice of a third party summons to the taxpayer subject to

the investigation when the summons is "issued to determine whether or not records of the business transactions or affairs of an identified person have been made." *Id.* The Supreme Court has construed the powers of the IRS broadly. This standard was articulated in *U.S. v. Powell*, 379 U.S. 48 (1964) where the Court established the minimum requirements for a valid IRS summons:

> "[the commissioner] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code […] and has notified the taxpayer in writing to that effect."

*Id.* at 57-58. These are the only grounds by which a taxpayer may challenge an IRS summons. The initial *Powell* requirements have been met. (Order Adopting Report and Recommendation at 4.) Petitioners contend that they have a good likelihood of success because there remains a serious legal question with regards to the interpretation of exception § 7609(c)(2)(B) and because they were denied an evidentiary hearing.

## A. Serious Legal Questions

Petitioners contend that the "instant case presents a very unique issue of whether the IRS qualified for a very narrow exception to the general rule requiring notice to the taxpayer." (Petitioners' Motion for Stay at 3.) The Petitioners claim that the stay should be granted to allow the Ninth Circuit to provide a "decisive clarification of the governing standard." *Kerr v. U.S.*, 1985 WL 5962, *1 (D. Mont. 1985). The Court agrees with the Petitioners that there is no known authority directly interpreting § 7609(c)(2)(B). However, the lack of this authority is not sufficient to establish the required difficult legal question that would warrant a stay pending an appeal. While no court has ruled on that section specifically, the issue of whether notice is required has been addressed by many courts.

At the outset it should be noted that "a person entitled to notice is allotted no extra protection from the IRS's power to summons; rather, § 7609(b)(2) merely grants standing to the person entitled to notice so that he or she may challenge the summons in district court." *Ip v. United States*, 205 F.3d 1168 (9th Cir. 2000). The notice requirement is not

intended to create a substantive right in the taxpayer, merely to afford them an opportunity to protest abuses in the same vein as outlined in *Powell*. In order to challenge the IRS "the taxpayer must allege specific facts and evidence to support his allegations of bad faith or improper purpose." *United States v. Josey*, 131 F.3d 1325, 1328 (9th Cir. 1997) (internal quotations and citations omitted). Further, courts are admonished by the Ninth Circuit that the summons statute "must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985). Against this backdrop significant latitude should be given to the IRS, even if a specific exception to the notice requirement has not been ruled on.

While courts have not interpreted part (B) of § 7609(c)(2), they have dealt with other exceptions to the requirement. The Petitioners do not challenge the legality of § 7609(c)(2)(B), they merely protest that because there is very little to no authority on it they should be entitled to a stay. When courts have examined other notice exemptions in the same statute they have generally construed them broadly. In *United States v. Boulware*, 205 Fed.Appx 170 (9th Cir. 2006) the IRS served a summons on the third party seeking to examine their tax liability. *Id.* at 171. The court interpreted § 7609(c)(2)(A) to not require a summons. *Id.* In *Tarantino v. U.S. I.R.S.*, 321 Fed.Appx 638 (9th Cir. 2009), the court found that no notice was required because the IRS had issued its summons in the aid of the collection of the taxpayer's tax liability consistent with § 7609(c)(2)(D)(i). *Id.* at 1. While there is no known authority on the specific exemption used by the IRS on this case, other courts have found that "the statute requires notice for any production of records by third-party recordkeepers, but does not require it if the summons only asks whether records have been made or kept." *United States v. MacKenzie*, 777 F.2d 811, 820 (2d Cir. 1985) (internal quotations and citations omitted). *MacKenzie* was decided before § 7609(c)(2)(B) was codified in its current form, but it mirrors the current language in the statute and uses the legislative history of the Internal Revenue Code to bolster its holding. Given this authority it seems unlikely that the Ninth

Circuit would agree with the Petitioners that the governing standard is in need of decisive clarification.

That is not to say the IRS' powers are unlimited. The Ninth Circuit in *Ip v. United States*, 205 F.3d 1168 (9th Cir. 2000) held that the IRS had stepped beyond the notice exemption currently codified in § 7609(c)(2)(D)(i-ii). In that case, the IRS had sought to summons the records of a taxpayer who bore no legal relationship with any person against whom a tax assessment had been made. *Id.* at 1169. Indeed, the only connection the taxpayer had was that her fiance was an agent of the company under investigation. *Id.* Given such a factual situation, the court held that the IRS could not simply use the "assessment of tax liability" language in § 7609(c)(2)(D)(i) to broaden the exemption to the point no notice would be required. *Id.* at 1173. The Petitioners in this case have failed to allege facts that would create such an attenuated connection with the subject matter of the legitimate IRS investigation. The Petitioners are the company directly under investigation and the president and primary shareholder. They are exactly the kind of parties that Congress intended to be exempt from the notice requirement.

Because the Petitioners cannot demonstrate that the legal question they present is difficult or requiring clarification, they should not be granted a stay on those grounds.

### *B. Evidentiary Hearing*

Petitioners contend that because they were denied an evidentiary hearing their likelihood of success on the merits has not been adequately ascertained, and therefore a stay should be granted in order to allow them to challenge the summons. (Pet'rs' Reply Br. In Supp. of Mot. to Stay Enforcement of IRS Summons Pending Appeal at 8, Dkt. 33.) As with the notice requirement, provisions of the law that permit evidentiary hearings are not intended to confer any substantive right on the taxpayer. *United States v. Kis*, 658 F.3d 526, 535 (7th Cir. 1981) ("The sole reason for the proceedings and for permitting the taxpayer to intervene under section 7609 is to ensure that the IRS has issued the summons for proper investigatory purposes under section 7602 and not for some illegitimate purpose.") The Court is instructed that "if at this stage the taxpayer
MEMORANDUM ORDER - Page 7
10ORDERS\MARCON

cannot refute the government's Prima facie [sic] *Powell* showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceedings on the papers before it and without an evidentiary hearing." *United States v. Garden State Nat. Bank*, 607 F.2d 61, 71 (3rd Cir. 1979). In order to meet its heavy burden the taxpayer must put forward more than mere legal conclusions; they must allege specific facts and evidence to support their allegations. *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985).

The Petitioners here have failed to meet that burden. The Petitioners have alleged no facts that would refute the already recognized prima facie *Powell* case the IRS has put forth. It is clear that the Supreme Court has interpreted summons enforcement to be "summary in nature." *United States v. Stuart*, 489 U.S. 353, 369 (1989). In the face of this instruction it is not sufficient for the Petitioners to allege only that they do not have the opportunity to develop their case. They must present specific facts and allegations that would show the IRS has not met the *Powell* factors. Because the Petitioners have failed to provide this evidence their likelihood of success on the merits is at best minimal.

## 2. Likelihood of Irreparable Harm

In addition to making a showing of a likelihood of success a petitioner seeking a stay pending appeal must show "that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 375 (2008) (emphasis in original) (citations omitted). As discussed earlier, the Court in *Winter* established a burden of likelihood, as opposed to possibility, for a showing of irreparable harm. The Court held that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to relief." *Id.* (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In order to show irreparable harm, the Petitioners claim that any production of the documents would moot an appeal and deprive them of any remedy if their claims that the IRS summons was improper are found to be valid. (Pet'rs' Br., at 4.)

In order to show that compliance with an IRS order moots an appeal the Petitioners rely on *Hintze v. IRS*, 879 F.2d 121 (4th Cir. 1989) ("[C]ompliance with an IRS summons mooted the appeal of a district court order denying a taxpayer's motion to enjoin the government from enforcing a summons.") The Supreme Court, however, has definitively rejected the approach taken by Circuit Courts as in *Hintze*. In *Church of Scientology of California v. United States*, 506 U.S. 6 (1992), the Court faced a similar situation as in *Hintze* where the IRS had obtained tapes through a summons. The Court held that:

> Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the tapes, a court does have power to effectuate a partial remedy by ordering the government to destroy any and all copies it may have it is possession.

*Id.* at 13. The Court recognized that there could be a remedy even if the information summonsed had been given to the IRS.

Petitioners are correct to assert that the sort of relief as envisioned in *Church of Scientology* is "partial and provisional." (Pet'rs' Reply, at 8.) It is impossible to entirely undo the invasion of privacy or the disclosure of documents. The Supreme Court's standard in *Winter* is clear, however, and given that the Petitioners have a remedy even if the documents are disclosed it is difficult for them to meet their burden under the heightened irreparable harm standard. Though the Petitioners are able to show some potential harm, it is not likely to outweigh other considerations and a judicial remedy exists to limit the impact of any harm of disclosure if Petitioner is successful on appeal.

**3. Balance of the Equities**

Petitioners claim that the IRS acted in bad faith by issuing its request for production on May 10, 2010, which was within the automatic ten day stay of enforcement after a judicial order as codified in Fed. R. Civ. 62(a) and the fourteen day stay in the Court's order. It does not appear in the record that any documents were actually surrendered to the IRS. Whether the IRS attempted to retrieve the documents before the stay ended is moot since no documents were produced. The Petitioners have suffered no harm, and have not demonstrated that the balance of the equities tips in their favor.

MEMORANDUM ORDER - Page 9
10ORDERS\MARCON

### 4. The Public Interest

The Supreme Court has long upheld the government's "need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974). The public interest in this area is very high, and when compared with the minor harm Petitioners will suffer because of the existence of a remedy on appeal, it is clear that the government's interest outweighs the Petitioners'.

### CONCLUSION

The Petitioners in this case have failed to show that they have a sufficient likelihood of success or irreparable injury to warrant a stay pending appeal. In addition they have failed to show that the balance of the equities tips in their favor. Because the Petitioners are unable to show a likelihood of success or irreparable injury the public interest in the expedient collection of taxes outweighs any harms claimed by the Petitioners. Since the IRS does not object, the Court will grant a temporary stay to allow Petitioners time to request a stay from the Ninth Circuit.

### ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Petitioners' Motion for Stay of Enforcement of IRS Summons Pending Appeals (Dkt. No. 25) is **DENIED**.

2) Petitioners' Motion for a Temporary Stay for a Period of 14 Days Within Which Petitioners May File a Motion for Stay in the United States Court of Appeals for the Ninth Circuit (Dkt. No. 33) is **GRANTED**.

DATED: **July 14, 2010**

Honorable Edward J. Lodge
U. S. District Judge